## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAINSOFT, a division of Aquion, Inc., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 15-0432-S-PAS |
| v. | ) ) ) | |
| BRIAN MACFARLAND, d/b/a "Lazy Man & Money," | ) ) ) | |
| Defendant. | ) ) | |

## SECOND AMENDED COMPLAINT

Plaintiff RainSoft ("RainSoft"), by its attorneys, hereby complains against defendant Brian MacFarland ("MacFarland") as follows:

### NATURE OF THE ACTION

1.     Working under the pseudonym "Lazy Man," defendant Brian MacFarland makes a living by disparaging companies and products on his internet website, "Lazy Man & Money." Self-styled as a "consumer advocate," MacFarland uses false and misleading statements about other companies and products to promote and sell his own services, including advertisements ("Custom advertisements are our specialty.").   For a company unfortunate enough to be the target of MacFarland's false and deceptive practices, the results can be devastating.  Following a series of internet posts on "Lazy Man & Money," in which MacFarland falsely and misleadingly accused RainSoft repeatedly of "scamming" consumers and engaging in "fraudulent marketing," "dishonest sales tricks," and "selling fear, not good products," RainSoft began to suffer and continues to suffer significant lost sales, harm to its reputation, and loss of business goodwill. Accordingly, RainSoft now brings this lawsuit for injunctive relief and damages in order to stop and remedy MacFarland's willful and deliberate misconduct.

## PARTIES

2.     RainSoft is a division of Aquion, Inc., a company incorporated under the laws of Delaware with a principal place of business at 2080 E. Lunt Avenue, Elk Grove Village, Illinois.

3.     Brian MacFarland is an individual residing in the State of Rhode Island.

## JURISDICTION & VENUE

4.     This Court has subject matter jurisdiction over Count I of this lawsuit pursuant to 28 U.S.C. § 1331 in that it arises under the laws of the United States; specifically, the Lanham Act, 15 U.S.C. § 1125(a).

5.     This Court has supplemental subject matter jurisdiction over Count II of this lawsuit pursuant to 28 U.S.C. § 1367 because it is so related to Count I that it forms part of the same case or controversy under Article III of the United States Constitution.

6.     This Court also has subject matter jurisdiction over Counts I and II of this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because MacFarland is a resident of this judicial district.

## FACTUAL BACKGROUND

8.     RainSoft manufactures premium solutions to treat, purify, and soften water for homes and businesses.  RainSoft products range from in-home, under-the-counter drinking water systems to large, institutional treatment systems custom-built for food processing plants, hotels, office buildings, hospitals, and factories.  Each RainSoft product is subjected to rigorous testing for unsurpassed performance and durability.  RainSoft products are industry leaders and have received numerous coveted industry certifications.

2

9.     RainSoft does not sell its products directly to consumers.   Instead, RainSoft distributes its products through more than 70 authorized, independently owned dealerships located throughout the United States and in 20 countries across Europe, Asia, and the Middle East.  These independent dealers also install and service RainSoft products.

10.     RainSoft promotes its products through internet advertising.  RainSoft maintains a website at www.rainsoft.com that contains pictorial and written descriptions of its products and services.  RainSoft also maintains an internet presence through LinkedIn, Facebook, and other social media websites in order to connect with potential and current customers.

11.     "RainSoft" is a valid, registered federal trademark owned by Aquion, Inc.

12.     Consumers seeking information on RainSoft, or water treatment solutions in general, regularly use the internet to perform research and collect information.  Accordingly, false and misleading statements about RainSoft on websites or in internet search results necessarily harm RainSoft's sales and reputation.

13.     MacFarland owns and operates an internet website named "Lazy Man & Money." MacFarland uses "Lazy Man & Money" to promote and sell services, including advertising.  As he explains in the "Advertising" section of "Lazy Man & Money" under the heading, "What advertisements are available?," MacFarland "graciously accept[s] graphical banners and boxes," "welcome[s] advertisements in our RSS feed," and specifically solicits custom advertisements: "Custom advertisements are our specialty.  Let us know what your requirements are and we'll work with you."  *See* www.lazymanandmoney.com/advertising/.

14.     Indeed, as MacFarland explains on his website: "Why advertise at Lazy Man and Money? More than 50,000 people visit every month. If you want traffic details contact me[.]

Lazy Man and Money was voted the third best money blog in 2007 by readers of Performancing.com. Thousands of people subscribe to the Lazy Man and Money feed."

15.    MacFarland also promotes and/or sells various financial services. Specifically, "Lazy Man & Money" contains numerous advertisements and references to banks and other financial services companies in categories such as "Top Savings Accounts," "Top Interest Checking Account Options," and "Top Certificate of Deposit (CDs) Options." On information and belief, MacFarland generates revenue by promoting the banks and other financial services companies whose names and advertisements are displayed on his webpage.

16.    MacFarland holds himself out publicly as a "consumer advocate." MacFarland affirmatively represents that the articles and comments he posts on Lazy Man and Money are the result of extensive research on the companies and/or products being reviewed.

### *MacFarland's False & Misleading Statements*

17.    In or around July 2013, MacFarland solicited Basement Technologies, LLC ("Basement Technologies") to perform an in-home sales demonstration of RainSoft products. Basement Technologies is an independent RainSoft dealer that operates primarily in Rhode Island and Massachusetts.

18.    Following Basement Technologies' sales demonstration, MacFarland published a series of posts on his website, "Lazy Man & Money," that contained numerous false and misleading statements about RainSoft and its products.

19.    On or about July 27, 2013, MacFarland published the first of these posts, entitled "*Is Home Depot's Water Test from RainSoft a Scam?*" In this post, MacFarland called RainSoft a "scam," falsely referred to Basement Technologies as "RainSoft," and misleadingly described Basement Technologies' sales presentation as "RainSoft's 'Magic Show.'"

20.     The statements disparaging RainSoft in the July 27, 2013 post arose from MacFarland's interaction with the independent dealer Basement Technologies in or around July 2013. Indeed, the post purported to be a detailed description of that interaction. At the time of publication, MacFarland knew that the sales representative who provided the in-home demonstration worked for an independent dealer and was not an employee or agent of RainSoft. Nevertheless, MacFarland falsely and knowingly referred to the dealer's sales representative as a "RainSoft salesman," and he falsely and knowingly associated his sales practices with the company itself. For instance, MacFarland falsely accused RainSoft of engaging in "deceptive" sales tactics and offering "a big bribe."

21.     On or about August 5, 2013, MacFarland published a second post, entitled "*RainSoft Scam? (Part 2).*" In this post, MacFarland continued to falsely and misleadingly attribute Basement Technologies' conduct to RainSoft. MacFarland also continued to make false and defamatory statements about RainSoft, such as referring to a "RainSoft Scam" in the post's title, calling RainSoft a "shady . . . company," and falsely stating that "their salesperson" engaged in "magic tricks and bad logic." MacFarland grouped this post on his website in the category of "scams." *See* http://www.lazymanandmoney.com/category/scams/.

22.     On or about August 29, 2013, RainSoft contacted MacFarland in an attempt to resolve his dissatisfaction with Basement Technologies' sales presentation. As a courtesy, RainSoft offered to refund a deposit that MacFarland had paid to Basement Technologies for a RainSoft water system. MacFarland accepted RainSoft's offer.

23.     Following this exchange, on or about September 14, 2013, MacFarland published a third post, entitled "*Yep. RainSoft Scammed Me Out of $100.*" In this website post, MacFarland continued to falsely and misleadingly attribute Basement Technologies' conduct to

RainSoft. MacFarland also continued to make false and defamatory statements about RainSoft, including that RainSoft "Scammed" him in the post's title, referring to "RainSoft's scammy presentation," and calling RainSoft "[t]he biggest scam against me[.]"

24.     In addition to these three posts, MacFarland published numerous other false and defamatory "comments" about RainSoft on "Lazy Man & Money."  Between July 2013 and September 2015, MacFarland published roughly 100 separate statements about RainSoft in the "Comments" section of the blog post "*Is Home Depot's Water Test from RainSoft a Scam?*."  MacFarland used the "Comments" section to respond directly to individual readers who had posted their own information about RainSoft and to continue his false and defamatory narrative that RainSoft is engaged in a "scam."

25.     Throughout the comments that MacFarland posted in the Comments section of his post, he repeatedly used variants of the word "scam," in addition to numerous other false and misleading terms, to describe RainSoft and its products.  For example:

- "I simply realized that one company [RainSoft] was *scamming* me . . . ." (April 22, 2015)

- "Again, I have no agenda except to tell people that RainSoft seems to be *playing a game to con people* . . . ." (April 22, 2015)

- "I say they are *scammers*, because of their sales tactics. *They pulled every trick in the book* and I called them out for the false ones in the article." (April 22, 2015)

- ". . . *RainSoft's pitch of misleading information* . . ." (April 10, 2015)

- "I have problems with their *fraudulent marketing* and crazy exorbitant price point." (February 16, 2015)

- ". . . *the scamming RainSoft magic show* . . ." (March 15, 2014)

- "I didn't just do a little online research to be a RainSoft expert. I went through the pitch. *RainSoft Scammed Me Out of $100* . . . until I publicly exposed *how they were scamming me* . . . ." (December 9, 2014)

- "It's all this unfounded fear with no evidence that causes people to realize that *RainSoft is in the market of selling fear, not good products*." (October 14, 2014)

- "*. . . magic shows and dishonest sales tricks* like those that have been detailed here" (September 28, 2014)

26.     MacFarland has publicly acknowledged that his use of the term "scam" in his

posts is expressly intended to convey to the reader "an attempt to defraud." As he wrote:

> It never occurred to me that "scam" may mean different things to different people. The other day someone told me that it implies illegal activity. That was very, very surprising to me. Here's why:
>
> Wikipedia redirects "scam" to Confidence Trick, which I feel is very appropriate *as they have the same meaning to me*. Wikipedia further defines Confidence Trick (and scam): "A confidence trick (synonyms include confidence scheme, scam and stratagem) *is an attempt to defraud* a person or group after first gaining their confidence, used in the classical sense of trust. Confidence tricks exploit characteristics of the human psyche such as dishonesty, honesty, vanity, compassion, credulity, irresponsibility, naïveté and greed."

*See* http://www.lazymanandmoney.com/category/scams/ (emphasis added).

27.     MacFarland has also represented that his statements about RainSoft and its

products are true statements of fact and/or the product of careful and extensive research, even

after being advised as to their false and misleading content. For example:

- "As you know from the article, I did extensive study before writing my review." (May 14, 2015)

- " . . . I didn't hold back on any 'truth.'" (May 15, 2015)

- "I am always about honesty. If anything is a lie or libel (slander is speech), PLEASE let me know and I will fix it." (July 16, 2015)

28.     MacFarland intentionally made these false and misleading statements about

RainSoft and its products in order to promote and/or sell his own services and/or in order to

cause harm to RainSoft.

29.     In his online posts, MacFarland intentionally used the term "RainSoft," a federal trademark owned by Aquion, Inc., to refer to the entity responsible for the in-home sales demonstration that MacFarland purportedly experienced at his home in or around July 2013.

30.     MacFarland used the term "RainSoft" despite his actual knowledge that it was the independent company Basement Technologies—not RainSoft—that was responsible for the in-home demonstration and accompanying sales pitches.  MacFarland's deceptive use of the RainSoft trademark was therefore likely to confuse and, in fact, did confuse consumers into believing that RainSoft engaged in dishonest sales practices, when in fact RainSoft does not engage in direct sales to consumers.

31.     In his online posts, MacFarland intentionally omitted the name "Basement Technologies" or any other reference to the fact that he had actually done business with an independent dealer.  Instead, in an effort to drive traffic to his website, MacFarland intentionally used the more recognizable national brand name RainSoft.  This tactic is commonly referred to as "search engine optimization."  The more traffic driven to a website, the higher its ranking becomes in the results page of an internet search engine, such as Google.  By using the trademarked term "RainSoft," MacFarland drew consumers away from RainSoft's own internet presence and towards his own.  Because Google and other advertisers pay website owners based on the number of views that a website draws, MacFarland promotes and sells his own services by increasing the visibility of his website in the search results of other companies, such as RainSoft.

32.     MacFarland also added "tags" to his posts about RainSoft to increase internet traffic.  A "tag" is metadata used by internet search engines to search and categorize webpages. Use of a particular term will increase visibility for the webpage in certain internet search results. For example, in his second post, MacFarland added the tag "scams."  In his third post,

MacFarland added the tags "RainSoft" and "scams." By using these tags, MacFarland intentionally increased the likelihood that a consumer researching RainSoft on the internet would find search results that linked RainSoft with the term "scam."

33.     MacFarland also used terms such as "scam" in the titles and content of his posts to increase internet traffic. The use of such inflammatory language is a well-established tactic to increase a webpage's ranking in internet search results.

34.     MacFarland's self-promotion using these various tactics has been so successful with respect to RainSoft that every time a consumer types "RainSoft" into Google, the first page of the search results directs the consumer to "Lazy Man & Money" and the post entitled, *"Is Home Depot's Water Test from RainSoft a Scam?"*

35.     MacFarland has also manipulated his website so that the Google search result for the webpage *"Is Home Depot's Water Test from RainSoft a Scam?"* reads as follows:

> Is Home Depot's Water Test from RainSoft a Scam?
> www.lazymanandmoney.com/rainsoft-scam/
> RainSoft is suing me to prevent you from reading this article.
> Here's what they don't want you to know . . .

36.     MacFarland has engaged in a practice of making similar baseless accusations against other companies using similar defamatory terms and engaged in similar misleading and deceptive tactics in order to promote and sell his services. MacFarland has been sued by other companies as a result of his false and misleading conduct.

37.     Because of MacFarland's false and misleading statements, RainSoft has suffered and continues to suffer significant and material harm. MacFarland's false and misleading statements have caused consumers not to purchase RainSoft products, sometimes even after a consumer has agreed to purchase a RainSoft product from an independent RainSoft dealer. The express stated reason by customers for their decision is MacFarland's posts and website.

38.     Indeed, several consumers have published comments on "Lazy Man & Money" expressly stating that they decided not to purchase RainSoft products as a result of MacFarland's false and misleading statements.  For example:

- "Thank you VERY much for this review.  It really helped us out as *I googled RainSoft during the 'magic show' . . . wish I read this before he came.* THANK YOU!" (December 11, 2013)

- "Dear Lazy Man—*I just called & cancelled my new $7K water system based on your article* & responders." (July 9, 2014)

- "Just another THANK YOU for this blog and all the helpful comments. You just saved us 7000$ [sic]. My husband and I had a sales guy at our house yesterday for over four hours and we somehow, against better judgment, agreed to their gold plan. Late last night stumbled onto this site and so glad we did! *Already cancelled the installation app* (for this Sunday morning)! . . . ." (March 22, 2015)

- "Thank you, Lazy Man for this great service!  I just got the 'Magic Show' after having my desert water tested. . . . Just the kind of information I needed after registering all my doubts about the 'facts' of this great offer . . . and saying *NO, no for me*." (April 3, 2015)

39.     The damages to RainSoft as a result of these lost sales exceeds $75,000.

40.     Because of MacFarland's false and misleading statements, RainSoft has also suffered a loss of reputation in that consumers have been deceived into believing that RainSoft is defrauding its customers, for example, by engaging in "fraudulent marketing," "dishonest sales tricks," and "selling fear, not good products."

41.     RainSoft has advised MacFarland of the false and misleading content of his statements.  RainSoft has asked MacFarland to stop publishing false and misleading statements about RainSoft and to correct those he has already published, including numerous statements that MacFarland has published in which he has referred to RainSoft and its products as a "scam," "scammers," and other variants of the term.  MacFarland has refused to do so.

42.    MacFarland's refusal to stop publishing false and misleading statements about RainSoft or correct those he has already published is evidence of willful misconduct.

43.    MacFarland has publicly acknowledged that his blog posts about RainSoft contain defamatory and/or false and misleading content.  In October 2015, MacFarland published an "Editor's Note" update to his first RainSoft blog post, in which he stated that "[he] had rewritten article [sic] with the help and guidance of a prominent First Amendment lawyer in an attempt to alleviate any legal concerns [RainSoft] had."  However, MacFarland's original post has not been changed and still contains defamatory and/or false and misleading content.

44.    MacFarland's repeated and continued refusal to stop publishing false and misleading statements about RainSoft or correct those he has already published is further evidence of willful misconduct.

## COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a))

45.    RainSoft re-alleges paragraphs 1 through 44.

46.    MacFarland's false and misleading statements constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

47.    By repeatedly using the term "RainSoft" in his online posts, MacFarland used the "RainSoft" trademark without permission or authorization from Aquion, Inc.

48.    MacFarland's use of the RainSoft trademark was likely to cause confusion—and in fact did cause confusion—among consumers as to the origin, sponsorship, approval, and source of the services and commercial activities that MacFarland described in his online posts. In particular, MacFarland deceived consumers into believing that RainSoft was the source of the "big bribe," the "magic show," the "fraudulent marketing," the "dishonest sales tricks," and the

other nefarious activities that MacFarland described.  In actuality, if any such activities ever occurred, their true and only source was an independent, individual dealer, not RainSoft.

49.    MacFarland also made intentionally false statements that misrepresented the nature, characteristics, and qualities of RainSoft's goods and services.  In particular, RainSoft falsely stated that RainSoft is a "scam" company that sells "scam" products and attempts to "scam" and "defraud" its customers.  In actuality, RainSoft does no such things.

50.    MacFarland knew or should have known that his statements were false or likely to mislead.

51.    MacFarland's false and misleading statements constitute commercial advertising or promotion, because a primary purpose and effect of MacFarland's "Lazy Man and Money" website is to promote certain products while disparaging other products.  MacFarland sells advertising and derives revenue in connection with the content of his posts.

52.    As an actual and proximate result of MacFarland's willful and deliberate conduct, RainSoft has suffered damages in an amount to be determined at trial.

## COUNT II
### (Libel)

53.    RainSoft re-alleges paragraphs 1 through 44.

54.    Through his internet posts discussing RainSoft and statements in the "Comments" sections of those posts, MacFarland defamed RainSoft in at least the following ways:

    (a)    By repeatedly and falsely stating that RainSoft and its products are a "scam" and that RainSoft "scammed" a customer "out of $100";

    (b)    By falsely stating that RainSoft tries to "con" its customers;

    (c)    By falsely stating that RainSoft engages in "fraudulent marketing," spreads "misleading information," deploys "deceptive" practices, and uses "dishonest sales tricks";

(d)    By falsely stating that RainSoft puts on a "magic show" consisting of "magic tricks";

(e)    By falsely stating that RainSoft offered "a big bribe";

(f)    By falsely stating that RainSoft is a "shady" company;

(g)    By falsely stating that RainSoft committed unsavory acts that, if such acts occurred at all, were in reality committed by an independent dealer, not by RainSoft.

55.    MacFarland's defamatory falsehoods were of and concerning RainSoft, and they directly impugned RainSoft's reputation. MacFarland's defamatory falsehoods charged RainSoft with improper conduct and a lack of skill and integrity in its business. MacFarland's defamatory falsehoods were calculated to injure—and did in fact injure—RainSoft's business and standing in the business community and among its customers.

56.    MacFarland published his falsehoods at www.lazymanandmoney.com, a website accessible to many millions of people around the world. Many thousands of readers visited the defamatory posts and viewed MacFarland's defamatory falsehoods. Many then decided not to purchase RainSoft's products.

57.    At the time that MacFarland published his defamatory falsehoods, MacFarland knew that they were factually inaccurate or recklessly disregarded their truth or falsity.

58.    MacFarland acted with ill will and malice by publishing defamatory falsehoods about RainSoft, by refusing to stop publishing defamatory falsehoods about RainSoft, and by refusing to correct defamatory falsehoods about RainSoft that he has already published.

59.    As an actual and proximate result of MacFarland's defamatory falsehoods, RainSoft has suffered monetary damages through a loss of sales and a diminution of goodwill.

## RELIEF REQUESTED

WHEREFORE, RainSoft prays for judgment as follows:

(a)     An injunction (i) prohibiting MacFarland from using the trademark
        "RainSoft," (ii) prohibiting MacFarland from publishing any false or
        defamatory statements regarding RainSoft, and (iii) requiring MacFarland
        to remove all false and defamatory statements regarding RainSoft from
        "Lazy Man & Money" and any other website(s) that may contain such
        false and defamatory statements;

(b)     Damages sufficient to compensate RainSoft for the harm caused by
        MacFarland's false and misleading statements, trebled for MacFarland's
        willful, intentional, and deliberate conduct;

(c)     Punitive damages;

(d)     Attorney's fees; and

(e)     Prejudgment interest, costs, and such other relief as this Court deems
        appropriate.

## DEMAND FOR JURY TRIAL

RainSoft requests a trial by jury.


                                        RAINSOFT, a division of Aquion, Inc.

                                        By its Attorneys,


                                        /s/ Mark W. Freel
OF COUNSEL                              Mark W. Freel, Esq. (#4003)
John M. Touhy                          Krystle G. Tadesse (#7944)
David M. Friebus                       LOCKE LORD LLP
BAKER & HOSTETLER LLP                   2800 Financial Plaza
191 North Wacker Drive, Suite 3100      Providence, RI 02903
Chicago, Illinois 60606                (401) 274-9200
(312) 416-6200                         (888) 325-9015 (Fax)
(312) 416-6201 (fax)                   Mark.freel@lockelord.com
jtouhy@bakerlaw.com                    Krystle.tadesse@lockelord.com
dfriebus@bakerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2015, I filed and served this document through the electronic filing system and is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.


/s/ Mark W. Freel_____