IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAINSOFT, a division of Aquion, Inc., a Delaware corporation, | )<br>)<br>) |
| Plaintiff, | )    C.A. No. 15-0432-S-PAS<br>) |
| v. | )<br>) |
| BRIAN MACFARLAND, d/b/a "Lazy Man & Money," | )<br>)<br>) |
| Defendant. | ) |

**RAINSOFT'S MOTION FOR SANCTIONS**

Plaintiff RainSoft ("RainSoft"), by its attorneys, hereby respectfully moves this Court for sanctions against Defendant Brian MacFarland ("MacFarland") pursuant to Fed. R. Civ. P. 37. In support of this motion, RainSoft states as follows:

**INTRODUCTION**

Brian MacFarland withheld critical evidence from RainSoft until summary judgment. After telling the Court he would produce any email about RainSoft "he authored and received," MacFarland produced nothing, explaining to RainSoft that such communications did not exist. Then, only hours before RainSoft was due to respond to his motion for summary judgment, MacFarland produced 234 pages of email that revealed his candid admissions about the merits of the lawsuit, his attorney's concerns about liability, and even the fact his email was discoverable. As a result of this untimely disclosure, RainSoft was forced to incur substantial costs to address this last-minute evidence in its summary judgment response, and remains prejudiced even now because it was robbed of the opportunity to ask MacFarland about these emails in a deposition. Because MacFarland's wrongful failure to disclose his communications was neither substantially justified nor harmless, sanctions under Rule 37 are warranted.

BACKGROUND

MacFarland's communications about RainSoft have been at issue since the start of fact discovery. In March 2016, RainSoft served its initial set of discovery requests. As relevant here, RainSoft's Document Request No. 21 sought "All communications with any person relating to RainSoft or its products." Dkt. No. 54-2 at 5. In response to this request, "notwithstanding" certain objections, MacFarland produced a single email chain between himself and RainSoft representatives that was dated from August 2013. Dkt. No. 54-4 at 7.

Troubled by MacFarland's lack of production, RainSoft raised its concerns about his response with MacFarland's counsel during a telephone meet-and-confer on June 17, 2016, and again in a follow up letter dated July 8, 2016. As RainSoft explained in its letter:

> **Document Request No. 21.** This request sought "[a]ll communications with any person relating to RainSoft or its products." In response, Mr. MacFarland produced a single email chain between himself and RainSoft representatives. It is implausible that Mr. MacFarland has no other communications; for example, non-privileged emails with family or friends or communications with subscribers and/or commentators on his websites regarding RainSoft or this case. At the very least, Mr. MacFarland must identify the efforts made to respond to this request.

Dkt. No. 54-7 at 5.

After MacFarland made it clear that he would not supplement his document production without a court order, RainSoft filed a motion to compel in August 2016. In its motion, RainSoft once again raised concerns that MacFarland had not produced all of his communications about RainSoft, and it asked the Court to compel MacFarland to produce them or, at the very least, identify the efforts he had made to search for such communications:

> **Argument:** MacFarland produced a single email chain with RainSoft representatives in response to this request. However, it is implausible MacFarland has no additional non-privileged communications in his possession, custody, or control; for example, emails with his family or friends or communications with subscribers or commentators on his websites regarding RainSoft or this litigation. Therefore, RainSoft respectfully requests that this Court compel MacFarland to

> produce the documents sought by this request or, at the very least, identify the efforts made to search for and identify documents responsive to this request.

Dkt. No. 54 at 10.

On August 12, 2016, in his written response to RainSoft's motion, MacFarland expressly agreed to produce the communications that RainSoft had requested:

> Notwithstanding these objections, Mr. MacFarland will produce responsive documents of communications he authored and received, but will need some additional time to search for and compile the responsive documents.

Dkt. No. 58 at 12.

Then again, on September 2, 2016, at a hearing before Magistrate Judge Sullivan on RainSoft's motion to compel, counsel for MacFarland reiterated MacFarland's commitment to search for and produce communications related to RainSoft:

> THE COURT: Okay. All right. Now I'm a little confused, though. Request 21 on communications with any person related to RainSoft, is that –
>
> MS. DUNN: We are in our opposition, --
>
> THE COURT: Yes. I thought you said that's all set.
>
> MS. DUNN: -- we're working on that. He's providing those e-mails.
>
> THE COURT: All right. That's what I thought.
>
> MS. DUNN: But we have to go through them for attorney-client.
>
> THE COURT: I thought from what Mr. Friebus just said he was –
>
> MS. DUNN: Yes, so we're working on that. We're going to work on getting that to them.
>
> THE COURT: All right. All right. All right.

Dkt. No 63 at 51:18-52:9.  The Court's rulings on RainSoft's motion were memorialized in a written order dated September 12, 2016.  Dkt. No. 62.

After the hearing, MacFarland did not produce any email, leading RainSoft to believe that MacFarland did not have any responsive documents.  In subsequent conversations with

3

MacFarland's counsel, RainSoft was essentially told that MacFarland communicated principally through articles and comments to his website and that therefore it should not be surprising that MacFarland did not have any emails related to RainSoft.

MacFarland was deposed on June 29, 2017.  During his deposition, MacFarland testified that he had emailed with a group of friends about RainSoft before publishing his first article. After the deposition, RainSoft asked MacFarland to search for and produce the referenced email:

> In addition, Mr. MacFarland identified emails that he sent to friends/colleagues following the in-home sales presentation (page 89, I believe) that were not produced to us.  Can you please double-check to ensure that Mr. MacFarland searched for those emails and produce them or confirm they no longer exist?

*See* July 17, 2017 Correspondence, attached as Exhibit A.  On August 4, 2017, MacFarland produced a single email-string.  *See* Dkt. No. 84-30.

Fact discovery closed on August 4, 2017.  *See* Dkt. No. 82.  After MacFarland sought and obtained leave of Court to move for summary judgment in early September 2017, RainSoft asked him to update his discovery responses, including double-checking (or so RainSoft thought) to ensure that all communications about RainSoft had been produced.  In the weeks that followed, RainSoft continued to press MacFarland to supplement his discovery responses.  *See* November 2017 Correspondence, attached as Exhibit B, at 4-7.  Finally, on November 13, 2017, MacFarland's attorneys told RainSoft:

> We're still waiting for Mr. MacFarland to send us the documents you have requested. As soon as he does, we will produce them to you. He has told us that he is working on compiling the documents. Hopefully that will be in the next couple of days.

*See id.* at 4.  A week later, on November 21, 2017, MacFarland produced 26 emails to RainSoft.

*See id.* at 2.  In a cover email to that production, MacFarland's counsel wrote:

> Mr. MacFarland is still working to get us the Schedule C for FY 2016 and some more communications that he has that are responsive to RainSoft's discovery requests. When he gets those to us, we will send them your way.

4

*See id.*  Meanwhile, RainSoft was preparing its objection to MacFarland's motion for summary judgment, which was due on November 30, 2017.

On November 29, 2017, at 6:20pm ET, MacFarland's counsel sent the following email:

> Attached are the remaining communications that are responsive to RainSoft's Doc Request 21.  ***These documents were given to us today by Mr. MacFarland.***

*See id.* at 1 (emphasis added).  Attached to this email were 234 pages of correspondence between MacFarland and third parties dating back to August 2013.  *See* Group Exhibit C.

The correspondence MacFarland produced contained remarkable admissions on several critical points.  For example, MacFarland argued on summary judgment that he "disclosed" all of the facts underlying his articles; however, in one email MacFarland confided ▮

▮

▮  Ex. C at LazyMan-09.  In another email, MacFarland conceded that RainSoft's ▮

▮ to be upset about his misidentification of the company.  Ex. C at LazyMan-132.

In another email, MacFarland disclosed that his lawyer advised him: ▮

▮

▮  Ex. C at LazyMan-147.  Consequently, MacFarland explained, he "attempted to cover my ass by writing" an article titled "What Is A Scam Anyway?"  *Id.*  In another email, ▮

▮

▮  Ex. C at LazyMan-150.  And in yet another email, MacFarland confessed: ▮

▮

Ex. C at LazyMan-151.

5

In the emails, MacFarland also admitted to RainSoft's allegation (which he denied in his answer), ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████   Ex. C at LazyMan-171.

On November 30, 2017, the next morning after receiving MacFarland's production, RainSoft filed an emergency motion to stay its response to MacFarland's motion for summary judgment.  After a telephone hearing that same day with Magistrate Judge Sullivan, briefing on summary judgment was stayed until December 11, 2017.  During that time, RainSoft reviewed MacFarland's eleventh-hour production and had to re-work what had been a near-final response brief and statements of fact to address the new evidence.  RainSoft filed its summary judgment response and supporting materials on December 11, 2017.  *See* Dkt. Nos. 93-97.

A month later, MacFarland filed his summary judgment reply.  In his brief and response to RainSoft's Local Rule 56(a) statements of fact, MacFarland tried to spin his emails, arguing, for example, that he only "hid" information out of concerns for his safety, or urging the Court to interpret the email in ways favorable to him.  *See, e.g.,* Dkt. No. 111-1 at ¶177, ¶192.

RainSoft now respectfully moves this Court for sanctions pursuant to Rule 37 to remedy the harm MacFarland has caused by withholding evidence.  Specifically, as explained below, RainSoft requests: (1) that MacFarland pay RainSoft's reasonable expenses, including attorney's fees, for motion practice and other work necessitated by his failure to produce his emails; (2) that MacFarland pay RainSoft's reasonable expenses, including attorney's fees, to depose him on this new material; and (3) that the jury be informed of MacFarland's withholding of evidence.

## ARGUMENT

Rule 26(e) requires a party "[to] supplement or correct its disclosure or response" to a discovery request "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e).  If it fails to do so, Rule 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  If excluding evidence would benefit the offending party, "instead of this sanction, the court . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions . . . ." *Id.*

In this case, sanctions are warranted under Rule 37(c)(1) because MacFarland's failure to produce his email—a violation of Rule 26(e)—was neither substantially justified nor harmless. Although sanctions under Rule 37(c)(1) are permissive rather than mandatory, the egregious nature of MacFarland's withholding of critical evidence until summary judgment, including his misrepresentations to the Court and to counsel, strongly counsel in favor of holding MacFarland responsible for the costs that his conduct has imposed unnecessarily on RainSoft.[1]

---

[1] MacFarland's conduct is also arguably sanctionable under Rule 37(b), which applies when a party "fails to obey an order to provide or permit discovery."  Although the Court did not expressly provide in its September 12, 2016 Order that MacFarland had to produce his communications about RainSoft, there is no question that MacFarland secured the denial of RainSoft's motion to compel on this point by specifically promising compliance with RainSoft's discovery request.  *See* Dkt. No 63 at 51:18-9. Further, "[s]anctions [under Rule 37(b)] may be imposed even for violation of a court's oral order, as long as a party has 'unequivocal notice that a court has asked that certain documents be produced.'" *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011).  There can be no doubt that after the September 2, 2016 hearing MacFarland had "unequivocal notice that a court ha[d] asked that" his communications about RainSoft be produced.  In any event, the only difference between Rule 37(b) and Rule 37(c) relevant here is whether sanctions are mandatory or permissive (*compare* Rule 37(b) *with* Rule 37(c)), which should not be an issue given the seriousness of MacFarland's conduct.

### A.     MacFarland's Withholding Of Evidence Was Not Substantially Justified.

Under Rule 37, "[s]ubstantial justification means justified in substance or in the main, to a degree that could satisfy a reasonable person." *Providence Piers, LLC v. SMM New England, Inc.*, No. CV 12-532S, 2016 WL 705259, at *4 (D.R.I. Feb. 2, 2016). Although MacFarland has not offered any explanation for why he did not produce his email during fact discovery, there can be no substantial justification for not doing so.

First, and most importantly, MacFarland told the Court in 2016 that he would search for and produce any communications about RainSoft. In August 2016, in his response to RainSoft's motion to compel, MacFarland agreed to "produce responsive documents of communications he authored and received, but will need some additional time to search for and compile the responsive documents." Dkt. No. 58 at 12. Then, on September 2, 2016, MacFarland's counsel assured the Court: "He's providing those e-mails." Dkt. No. 63 at 51:18-52:9. Either his counsel misrepresented these facts to the Court to moot RainSoft's motion (which seems very unlikely), or MacFarland told his lawyers he did not have any emails about RainSoft.

More troubling is the fact that MacFarland led RainSoft to believe that he had no email. After the September 2016 hearing, RainSoft was told that MacFarland communicated primarily through his website and, as a result, RainSoft should not be surprised he had no email to produce. But MacFarland's production reveals that around this same time he was actively engaged in extensive correspondence. *E.g.,* Ex. C at LazyMan-063-66, LazyMan-078-87, LazyMan-089, LazyMan-091-95. And in July 2017, when RainSoft asked for a specific email that MacFarland identified at his deposition, MacFarland gave no inkling that he was sitting on scores of other communications about RainSoft. If MacFarland's representations to the Court and RainSoft's follow up inquiries were not enough, certainly RainSoft's post-deposition request should have reminded MacFarland of his obligation to disclose his communications.

Indeed, it was only in October 2017 that MacFarland's counsel gave any hint there might be additional emails to produce, though even then there still was no indication MacFarland had withheld so many communications about so many critical issues.  Again, given the improbability that MacFarland's counsel intentionally misled RainSoft, the most probable conclusion is that MacFarland was withholding information from his lawyers.

Indeed, what makes MacFarland's failure to produce his email appear calculated is that he was an active participant in discovery who *knew* his emails about RainSoft were discoverable. As MacFarland's correspondence shows:



Ex. C at LazyMan-001; LazyMan-095; LazyMan-0149.  Similarly, MacFarland wrote on his website on August 30, 2016: "I'm a little surly after spending yesterday responding to RainSoft's legal discovery of my Yelp-like review here."  *See* https://www.lazymanandmoney.com/best-investment-idea-ever-short-herbalife-hlf-stock/ (last visited January 16, 2018).

But even before written discovery was served in this case MacFarland *knew* his emails were discoverable.  In August 2015, MacFarland was asked, ████████████████████ ████████████████████████████████████████ MacFarland replied, ████████████████████████████████████████████ ████████████████████ Ex. C at LazyMan-017 (emphasis added).  Two years later, in July 2017, MacFarland acknowledged once again that his email communications were discoverable, this time in an exchange with a commenter he reached out to privately:



Ex. C at LazyMan-0133 (emphasis added).

In sum, MacFarland's withholding of his email cannot be substantially justified. There is no way to square MacFarland's representations to the Court in August and September 2016 that he was in the process of "providing those e-mails" with the fact that they were not produced until 15 months later, well after the close of fact discovery. Furthermore, the emails themselves reveal not only that MacFarland actively participated in discovery, but demonstrate his awareness that his communications with others about RainSoft were discoverable.

**B.      MacFarland's Withholding Of Evidence Was Not Harmless.**

Nor can MacFarland's failure to produce his email be deemed harmless. "Harmlessness entails a fairly limited concept." *Providence Piers, LLC v. SMM New England, Inc.*, No. CV 12-532S, 2015 WL 9699936, at *4 (D.R.I. Oct. 1, 2015). "Harm," in the sense used in Rule 37, includes "infliction of additional expenses on the opposing party as well as the derailment of the court's scheduling order." *Providence Piers, LLC*, No. CV 12-532S, 2016 WL 705259, at *4. Both of these "harms" are present here.

First, the fact that MacFarland withheld his email until briefing on summary judgment caused RainSoft to incur significant expenses. As a purely practical matter, MacFarland's last-minute production forced RainSoft to scramble to stay briefing on summary judgment to review the emails, and then was forced to incur significant expense to address them in its response to MacFarland's summary judgment motion. Indeed, there was no way RainSoft could *not* address these emails given that they bore directly on MacFarland's arguments.

For example, MacFarland argued on summary judgment that RainSoft should be deemed a "limited purpose public figure" such that RainSoft must prove MacFarland acted with "actual malice"—"that is, with knowledge that [his statements were] false or with reckless disregard of whether [they were] false or not." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). But the emails contain direct evidence that he knowingly published false information. For example, in one email, MacFarland confessed: ███████████████ ███████████████████████████████████████████ Ex. C at LazyMan-177. And in another email, MacFarland wrote: ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ Ex. C at LazyMan-132 (emphasis added).

Similarly, MacFarland disputed RainSoft's allegation that by calling RainSoft a "scam" he was defaming the company. But in an email written shortly after RainSoft filed its lawsuit and MacFarland secured representation in Illinois, MacFarland disclosed to a friend:



Ex. C at LazyMan-147 (emphasis added). In another email, MacFarland appears to concede that he was ████████████████████████████████████ In yet another email, ████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████ Ex. C at LazyMan-150.

11

Despite the fact that most of the email existed at the time MacFarland was deposed in June 2017, RainSoft did not have an opportunity to ask MacFarland questions about them. Yet, MacFarland's lawyers are already trying to argue about what MacFarland really meant. *See* Dkt. No. 111-8 at 27 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. No. 111-1 ¶177, ¶192 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ Without the benefit of a deposition, RainSoft will be at a substantial disadvantage in responding to MacFarland's attempts to explain away his communications at a trial that he expects to take place. *E.g.,* Ex. C at LazyMan-137 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Other harm is more difficult to quantify. For example, fact discovery likely would have taken a different course had RainSoft known of individuals to whom MacFarland had confided his views of the case.[2] And although only the Court knows whether the admissions in the email would have affected its decision to allow MacFarland to move for summary judgment (*see* Sept. 8, 2017 Text Orders), they raise serious doubts about whether MacFarland had grounds to do so.

In short, MacFarland's withholding of evidence was not harmless. Not only did RainSoft incur substantial expenses as a result of the practical consequences of MacFarland's conduct in the form of motion practice and reworking work product, but MacFarland's withholding of his email until summary judgment unquestionably impacted the course of this litigation.

---

[2]    Indeed, MacFarland's failure to identify any of the individuals that appear in his correspondence is itself a stand-alone violation of Rule 26(e) that would support sanctions under Rule 37(c) given his now obviously-incomplete response to an interrogatory asking him to identify "persons who have knowledge of the facts alleged in the Complaint, and/or your answer and affirmative defenses." *See* Def. Response to Pl. Interrogatories, attached as Exhibit D, at 4.

12

### C. MacFarland Should Be Held Responsible For the Costs He Has Imposed On RainSoft As A Result Of Withholding Evidence.

Because MacFarland's violation of Rule 26(e) was not substantially justified or harmless, sanctions are warranted under Rule 37(c)(1). And although such sanctions are permissive rather than mandatory (assuming the Court finds Rule 37(b) inapplicable), there should be no hesitation in imposing them here considering MacFarland's promises to the Court that he would search for and produce his email, his private acknowledgments that his email was discoverable, and his representations to RainSoft there was nothing to produce.

Therefore, RainSoft respectfully requests that this Court order: (1) that MacFarland pay RainSoft's reasonable expenses, including attorney's fees, for motion practice and other work necessitated by his failure to produce his emails; (2) that MacFarland pay RainSoft's reasonable expenses, including attorney's fees, to depose him on this new material; and (3) that the jury be informed of MacFarland's withholding of evidence. *See* Fed. R. Civ. P. 37(c)(1)(A) & (B).[3]

#### 1. MacFarland Should Be Ordered To Pay RainSoft's Reasonable Expenses Caused By His Failure To Comply With Rule 26(e).

RainSoft has incurred substantial expenses as a result of MacFarland's failure to produce his email. First, RainSoft was forced to move to stay briefing on summary judgment in order to review his email production. *See* Dkt. No. 90. Likewise, RainSoft incurred substantial expenses re-working a near-finished summary judgment response and Local Rule 56(a) statements of fact to incorporate the newly-produced material. In addition, RainSoft will incur expenses for this motion practice, as well. Because RainSoft would not have incurred any of these expenses had

---

[3] MacFarland would be hard pressed to argue that sanctions are inappropriate given that he has already obtained an order barring RainSoft from using untimely-produced evidence absent good cause. *See* Dkt. No. 79. Indeed, MacFarland apparently intends to enforce this order strictly: when RainSoft asked him if he would consent to RainSoft's use of recently-discovered data, MacFarland flatly denied RainSoft's request. *See* Correspondence, attached as Exhibit E. Given that MacFarland is demanding strict compliance with the disclosure requirements of Rule 26, he should be held to the same standard.

MacFarland simply produced his email as required by Rule 26(e), he should be held responsible for these expenses since they are a direct result of his conduct.  *See* Fed. R. Civ. P. 37(c)(1)(A).

### 2. MacFarland Should Be Ordered To Pay RainSoft's Reasonable Expenses To Depose Him On His Emails.

RainSoft should also be allowed to depose MacFarland on this newly-produced material.[4] Most of the emails pre-date MacFarland's deposition, which was held on June 29, 2017.  Had MacFarland produced this email in Fall 2016, as required, and supplemented his production, as required, RainSoft would have had the opportunity to ask MacFarland about his communications at his deposition.  More importantly, RainSoft would be unfairly prejudiced if it is not allowed to ask MacFarland about this new material.  As noted above, MacFarland is already trying to argue about the intended meaning of his email in his summary judgment papers.  *E.g.,* Dkt. No. 111-1 at ¶177, ¶192; Dkt. No. 111-8, Def. Reply at 27, 29.  Although the Court must view these emails in the light most favorable to RainSoft at summary judgment, without the benefit of a deposition, RainSoft will be substantially disadvantaged in responding to his self-serving interpretations at trial.  In addition, by disclosing his attorney's advice to third-parties (*e.g.,* Ex. C at LazyMan-147), MacFarland has opened the door to questioning about this legal advice.  *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised.").

---

[4] MacFarland previously suggested he would ask to reopen discovery if RainSoft sought to depose him on this new material.  *See* Dkt. No. 91 at 2 ("If RainSoft seeks to take additional discovery based on the documents produced after the close of fact discovery, MacFarland will likely request the same consideration as to the discovery responses RainSoft produced after the close of fact discovery."). But MacFarland is drawing a false equivalence: unlike his email, the "discovery responses" to which he refers were not, in fact, actual responses to discovery requests but merely documents RainSoft provided as a courtesy following a deposition that MacFarland waited to schedule until the close of fact discovery. *See* Correspondence, attached as Exhibit F (declining to respond to document requests that MacFarland served the day before the close of fact discovery based on Local Rule 26(c)).

### 3. The Jury Should Be Informed That MacFarland Withheld Evidence.

Finally, this Court should allow the jury to be informed that MacFarland withheld his email from RainSoft. *See* Fed. R. Civ. P. 37(c)(1)(B). Not only do the emails contain damning admissions on key disputed issues, but the very fact that MacFarland hid this correspondence—knowing full well he had to disclose it to RainSoft—is critical evidence in and of itself, and lends additional weight to the impact of the admissions and observations in the email itself.

### CONCLUSION

Wherefore, RainSoft respectfully requests that this Court impose sanctions against Defendant Brian MacFarland pursuant to Fed. R. Civ. P. 37, including (1) that MacFarland pay RainSoft's reasonable expenses, including attorney's fees, for motion practice and other work necessitated by his failure to produce his emails, (2) that MacFarland pay RainSoft's reasonable expenses, including attorney's fees, to depose him on this new material, and (3) that the jury be informed of MacFarland's withholding of evidence, and other relief as the Court deems fit.

Dated: January 19, 2018

Respectfully submitted,

/s/ Mark W. Freel
Mark W. Freel (#4003)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(888) 325-9015 (fax)
mark.freel@lockelord.com

/s/ David M. Friebus
David M. Friebus (*pro hac vice*)
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
(312) 416-6200
(312) 416-6201 (fax)
dfriebus@bakerlaw.com

Jonathan L. Lewis (*pro hac vice*)
MCGUIRE WOODS LLP
2001 K Street N.W., Suite 400
Washington, DC 20006-1040
(202) 828-2875
(202) 828-2975 (fax)
jllewis@mcguirewoods.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2018, I filed and served this document through the electronic filing system and that it is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Mark W. Freel